UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
—————————————————————————————

TONYA CURTIS,

              Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

              Defendant.

—————————————————————————————

**REPORT AND
RECOMMENDATION**

11-CV-786
(GTS/VEB)

## I. INTRODUCTION

In May of 2007, Plaintiff Tonya Curtis applied for supplemental security income ("SSI") benefits and disability insurance benefits under the Social Security Act.  Plaintiff alleges that she has been unable to work since August of 2006 due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, the Olinsky Law Group, Karen S. Southwick, Esq., and Howard D. Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 19).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on May 29, 2007, alleging disability beginning on August 1, 2006. (T at 97, 105, 116).[1] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on August 13, 2009, before ALJ Thomas P. Tielens. (T at 22). Plaintiff appeared with her attorney and testified. (T at 25-56).

On September 18, 2009, ALJ Tielens issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. (T at 14-21). The ALJ's decision became the Commissioner's final decision on May 12, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, through counsel, timely commenced this action on July 11, 2011. (Docket No. 1). The Commissioner interposed an Answer on January 12, 2012. (Docket No. 8). Plaintiff filed a supporting Brief on February 27, 2012. (Docket No. 13). The Commissioner filed a Brief in opposition on May 11, 2012. (Docket No. 17).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further proceedings.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 10).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

_____

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, and had not engaged in substantial gainful activity since August 1, 2006, the alleged onset date. (T at 16).  The ALJ concluded that Plaintiff had the following impairments, which he found to be severe under the Act: chronic low back pain secondary to degenerative disc disease of the lumbar spine; history of (past) seizure disorder; and depressive disorder NOS ("not otherwise specified"). [4](T at 17-18).

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 18).  The ALJ concluded that Plaintiff retained the residual functional capacity to perform a "usefully full range of light work," as defined under 20 CFR §404.1567 (b) and 416.967 (b), with the proviso that she should

---

[4]The diagnosis of "depressive disorder NOS" is assigned to "disorders with depressive features that do not meet the criteria for Major Depressive Disorder, Dysthymic Disorder, Adjustment Disorder With Depressed Mood, or Adjustment Disorder With Mixed Anxiety and Depressed Mood." DSM–IV–TR at 381 (citations omitted); see Santiago v. Astrue, No. 11 Civ. 6873, 2012 WL 1899797, at *4 (S.D.N.Y. May 24, 2012)).

avoid hazardous work situations (e.g. unprotected heights and moving machinery). (T at 18-20).

The ALJ found that Plaintiff could perform her past relevant work as a cashier, as that work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (T at 20-21).

Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act between the alleged onset date (August 1, 2006) and the date of his decision (September 18, 2009) and was therefore not entitled to benefits. (T at 21). As noted above, the ALJ's decision became the Commissioner's final decision on May 12, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers five (5) principal arguments in support of her position. First, Plaintiff contends that the ALJ did not adequately develop the record. Second, Plaintiff challenges the ALJ's residual functional capacity ("RFC") determination. Third, Plaintiff contends that the ALJ did not properly assess her credibility. Fourth, Plaintiff asserts that the ALJ erred by finding that she could perform her past relevant work. Fifth, Plaintiff challenges the conclusion that jobs exist in significant numbers in the national economy that she can perform. This Court will address each argument in turn.

### a. Development of the Record

It is well-settled in this Circuit that in light of the "essentially non-adversarial nature of a benefits proceeding," the ALJ has "an affirmative duty to develop the record." Pratts

v. Chater, 94 F.3d 34, 37 (2d Cir.1996) (quoting Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir.1982)); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir.2000); Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996).

In this case, Plaintiff argues that the ALJ should have sought additional treatment records from Dr. Thomas Cummings, a treating physician.

In July of 2009, Dr. Cummings completed a Physical and Mental Medical Source Statement, in which he described Plaintiff's prognosis as "guarded." (T at 359). He opined that Plaintiff's pain and other symptoms were severe enough to often interfere with attention and concentration and imposed a moderate limitation with regard to Plaintiff's ability to deal with stress. (T at 361). Dr. Cummings concluded that Plaintiff could sit/stand/walk for less than 2 hours per day and would need a job that permitted shifting positions at will and taking unscheduled breaks every five to ten minutes. (T at 362). He recommended that Plaintiff use a cane and opined that she could frequently lift 10 pounds, occasionally lift 20 pounds, and never lift 50 pounds. (T at 362).

Concerning Plaintiff's mental abilities, Dr. Cummings opined that Plaintiff would be unable to meet competitive standards with regard to maintaining attention for two hour segments, maintaining regular attendance, sustaining an ordinary routine without special supervision, dealing with normal work stress, performing at a consistent pace without an unreasonable number and length of rest periods, and working in coordination with or proximity to others without being unduly distracted. (T at 364-65).

At the administrative hearing, the ALJ inquired about Dr. Cummings's treatment notes. (T at 36). Plaintiff's counsel advised that there was an "outstanding" request for the records. (T at 37). Counsel further stated "If you'd be willing to be give me two weeks, then

I can be sure I get the medical records in." (T at 38). The ALJ granted the request and held the record open. (T at 38). At the conclusion of the hearing, the ALJ reiterated that he was holding the record open for two weeks to enable Plaintiff's counsel to obtain Dr. Cummings's records. (T at 56). Plaintiff's counsel did not provide any additional records. (T at 14).

In his decision, the ALJ recognized that, as the treating physician, Dr. Cummings's opinion was presumptively entitled to controlling weight,[5] but described the physician's opinion as "strangely exaggerated," unsupported by "clinical findings," and contradicted by other evidence in the record. (T at 20). As such, the ALJ afforded Dr. Cummings's opinion "no significant weight." (T at 20).

Plaintiff contends that the ALJ should have further developed the record by issuing a subpoena for Dr. Cummings's records before making his decision. However, there is no explanation regarding why the records were not obtained by counsel, as promised during the administrative hearing. Likewise, Plaintiff's counsel does not point to any evidence indicating that counsel asked the ALJ to issue a subpoena and/or asked the ALJ to hold the record open for an additional period of time to allow counsel to obtain these critical

---

[5]Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

records.

This Court finds the lack of explanation from Plaintiff's counsel on this point extremely frustrating. Essentially, counsel argues that a remand is necessary because records that counsel promised to procure were not procured. Although the ALJ has an affirmative obligation to develop the record, Plaintiff's counsel certainly has a concomitant responsibility to provide records that he or she promised to procure (or, if counsel is unable to obtain the records, to ask for a subpoena).[6]

This Court notes that the Second Circuit (in an unpublished opinion) and at least two district courts have indicated that the ALJ may, under certain circumstances, satisfy the duty to develop the record by relying on the claimant's counsel to obtain additional medical documentation. See Rivera v. Commissioner of Social Sec., 728 F. Supp.2d 297, 330 (S.D.N.Y. 2010)("Courts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves, but often permit them to seek it through the claimant or his counsel . . . Accordingly, the ALJ's request that plaintiff's attorney obtain the recent treatment records from Lincoln Hospital fulfilled his obligations with regard to developing the record.")(citations omitted); Pagan v. Astrue, No. 11-CV-825, 2012 WL 2206886, at *8 (N.D.N.Y. June 14, 2012)(holding that ALJ satisfied duty to develop record by granting

_____

[6]Presumably, once the remand is obtained for further development of the record, counsel will seek attorneys' fees for a federal action that might have been unnecessary had counsel procured the records as promised or asked the ALJ to issue a subpoena. The Second Circuit's decision in Vincent provides at least some possible protection against such a result. See Vincent v. Comm'r of Social Security, 651 F.3d 299, 305 (2d Cir. 2011)("Because of the ALJ's duty to investigate, if counsel's entitlement to fees is questioned due to an undeveloped record, it must be clear that counsel bore primary responsibility for those deficiencies before the fee recovery is reduced.")(citing Bryant v. Apfel, 37 F. Supp.2d 210, 213 (E.D.N.Y.1999)). In a case where the attorney promised to provide the records and then failed to follow up, a court might reasonably conclude that counsel bore primary responsibility for the deficiency.

counsel additional time to obtain evidence and providing opportunity to request a further extension); see also Jordan v. Commissioner of Social Security, 42 Fed. Appx. 542, 543, 2005 WL 2176008, at *1 (2d Cir. Sep't 8, 2005)(unpublished).

However, this Court is mindful of strong language regarding the non-adversarial nature of benefits proceedings and is, of course, bound by rulings of the Second Circuit, which has shown a willingness to interpret broadly the ALJ's duty to develop the record. See Vincent v. Comm'r of Social Security, 651 F.3d 299, 305 (2d Cir. 2011)("The duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'")(citations omitted); see also Newsome v. Astrue, 817 F. Supp.2d 111, 137 (E.D.N.Y. 2011)("The fact that the ALJ requested additional information from the Plaintiff's attorney and did not receive that information does not relieve the ALJ of his duty to fully develop the record."); Ayer v. Astrue, No. 11- CV-83, 2012 WL 381784, at *6 (D. Vt. Feb. 6, 2012)("The fact that the ALJ requested additional medical records from [claimant's] attorney at the administrative hearing does not relieve him of his duty to fully develop the record.").

In this case, Dr. Cummings's treatment notes were central to the disability determination in this case. Plaintiff had an extended and regular treating relationship with the physician (T at 36) and the doctor's assessment of the extent of Plaintiff's physical and mental limitations was significantly at odds with the ALJ's ultimate residual functional capacity findings.

In considering Dr. Cummings's opinion, the ALJ labeled the assessment "difficult to understand" and "strangely exaggerated." (T at 18, 20). The ALJ had a duty to resolve his difficulty of understanding by either contacting Dr. Cummings or, at the very least,

reminding Plaintiff's counsel of the promise to procure the records.

Moreover, the ALJ discounted Dr. Cummings's opinion because the doctor "[did] not support his conclusions with clinical findings," (T at 20). However, such findings may well have been contained in the treatment notes, which were not included in the record through no fault of Dr. Cummings. The ALJ essentially assumed that the clinical findings were never made because counsel failed to produce the records. In a judicial proceeding, this sort of waiver may well be warranted; but as noted above, disability benefits proceedings have a different character. See Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must himself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel.") (citations omitted); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir.1998) (holding that where the "clinical findings [are] inadequate, it [is] the ALJ's duty to seek additional information from [the treating physician] sua sponte").

Accordingly, this Court finds that a remand is necessary for further development of the record with regard to the treatment records of Dr. Cummings, the treating physician.

### b.    Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

11

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ found that Plaintiff retained the RFC to perform a "usefully full range of light work" as defined under 20 CFR § 404.1567 (b) and 416.967 (b), with "only reasonable advisement to avoid hazardous work situations such as unprotected heights and moving machinery." (T at 18).

As a threshold matter, the ALJ's RFC determination needs to be revisited on remand because it is at odds with the treating physician's assessment, which indicated that Plaintiff suffered from limitations inconsistent with a "usefully full range of light work." As such, the question of Plaintiff's RFC will need to be reevaluated after the record has been further developed via the inclusion of Dr. Cummings's treatment notes.

In addition, the ALJ afforded "substantial evidentiary weight" to a physical RFC assessment provided by "B. Randall," a non-examining State Agency employee. (T at 322-27). Plaintiff argues that this was improper because "B. Randall" was a single decision-maker ("SDM"),[7] as opposed to a medical consultant.

It is not clear from the record whether "B. Randall" is, in fact, an SDM or a medical review consultant. If it is the latter, then the ALJ could have properly afforded the opinion

_____

[7]SDMs are non-physician disability examiners who "may make the initial disability determination in most cases without requiring the signature of a medical consultant." 71 FR 45890–01, 2006 WL 2283653.

some evidentiary weight. <u>See</u> <u>Brunson v. Barnhart</u>, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record). However, if B. Randall was an SDM, the ALJ's decision to assign the opinion "substantial" weight was error.

On May 19, 2010, Frank Cristaudo, the Chief Administrative Law Judge for the Social Security Administration, issued a memorandum citing POMS Instruction DI 24510.050C[8] and instructing all ALJs that RFC determinations by SDMs should not be afforded any evidentiary weight at the administrative hearing level.

Per this Chief ALJ memorandum, numerous courts have concluded that assigning any evidentiary weight to an SDM's opinion is an error. <u>See</u> <u>Yorkus v. Astrue</u>, No. 10-2197, 2011 WL 7400189, at *5 (E.D. Pa. Feb. 28, 2011)(collecting cases); <u>Foxx v. Astrue</u>, No. 08–00403–KD–B, 2009 WL 2899048, at *7 (S.D.Ala. Sept.3, 2009) ("[A] SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources.") (quoting <u>Botton v. Astrue</u>, 07-CV-612, 2008 WL 2038513 (M.D.Fla., May 12, 2008)).

The ALJ should clarify B. Randall's status on remand and reconsider the opinion in accordance with that clarification.

Lastly, this Court finds that the RFC determination should be revisited as it relates to Plaintiff's mental impairments. The ALJ's RFC findings did not include any limitations related to Plaintiff's depressive disorder. (T at 18-20). This is at odds with the medical

---

[8]The "POMS" is the Social Security Administration's "Program Operations Manual System," an internal manual used by Social Security employees to process disability claims.

record, which suggests at least some limitations. To wit the ALJ found Plaintiff's depressive disorder to be a severe impairment. (T at 17). Dr. Cummings opined that Plaintiff would be unable to meet competitive standards with regard to maintaining attention, maintaining regular attendance, sustaining an ordinary routine without special supervision, dealing with normal work stress, performing at a consistent pace without an unreasonable number and length of rest periods, and working in coordination with or proximity to others without being unduly distracted. (T at 364-65). Dr. Noia, the psychiatric consultative examiner, assessed moderate limitations with regard to relating to and interacting with others and noted "some difficulty dealing with stress." (T at 316). A. Hochberg, a non-examining State Agency medical review consultant,[9] indicated mild restriction with regard to activities of daily living and social functioning and moderate difficulties in terms of maintaining concentration, persistence, or pace. (T at 338).

On remand, the ALJ should reconsider whether some mental limitations should be included in the RFC in light of the evidence cited above. Moreover, additional records from Dr. Cummings should shed light on the basis for his restrictive findings with respect to Plaintiff's ability to perform the mental aspects of basic work activities.

### c. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting

---

[9]The record identifies A. Hochberg as a medical consultant (as opposed to an SDM). (T at 344).

the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1. [Plaintiff's] daily activities;

2.    The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;

3.    Precipitating and aggravating factors;

4.    The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;

5.    Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;

6.    Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

7.    Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that she uses a cane to walk and experiences constant, significant pain in her lower back, right hip, and down her leg. (T at 35, 39).  She can sit for 20 minutes if allowed to change positions and stand in one place without pacing or leaning for about 5 minutes. (T at 40).  She experiences a lack of motivation, difficulty sleeping, and crying spells related to her depression. (T at 44-45).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effect of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment, (T at 19).  As discussed above, the ALJ's RFC determination was flawed and needs to be reconsidered on remand after further development of the record.  Plaintiff's credibility will likewise need to be

reassessed on remand.

### d. Past Relevant Work

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

The ALJ concluded that Plaintiff retained the RFC to perform her past relevant work as a cashier. (T at 20). This finding is likewise contingent upon the validity of the ALJ's RFC assessment. For the reasons outlined above, that assessment (and, thus, the past relevant work determination will need to be revisited on remand).

### e. The Grids

At step 5 in the sequential evaluation, the Commissioner is required to perform a two part process to first assess the claimant's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that the claimant could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting,

18

standing, walking, lifting, carrying, pushing, and pulling." <u>Id.</u> at 667 n. 2; <u>see</u> 20 C.F.R. §

404.1567(a). Upon consideration of the claimant's residual functional capacity, age,

education, and prior work experience, the Grid yields a decision of "disabled" or "not

disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).  Moreover, if the

claimant has nonexertional impairments, the ALJ must determine whether those

impairments "significantly" diminish the claimant's work capacity beyond that caused by his

or her exertional limitations. <u>Id.</u>  A claimant's work capacity is "'significantly diminished' if

there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range

of work as to deprive him of a meaningful employment opportunity.'" <u>Id.</u> (quoting <u>Bapp</u>, 802

F.2d at 606).  If a claimant's work capacity is significantly diminished by non-exertional

impairments beyond that caused by his or her exertional impairment(s), then the use of the

Grids may be an inappropriate method of determining a claimant's residual functional

capacity and the ALJ may be required to consult a vocational expert. <u>See</u> <u>Pratts v. Chater</u>,

94 F.3d 34, 39 (2d Cir.1996); <u>Bapp v. Bowen</u>, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ concluded that Plaintiff could perform her past relevant work

as a cashier.  As such, the ALJ was technically not required to proceed to the step five

analysis.  However, the ALJ did apply that analysis and offered his findings as an

alternative basis for denying benefits.  In particular, the ALJ concluded that a finding of "not

disabled" would be directed by Medical-Vocational Rule 202.20.

However, the ALJ's application of the Rule was based upon his assessment of

Plaintiff's RFC (i.e. his conclusion that Plaintiff could perform a "usefully full range of light

work"). As discussed above, Dr. Cummings opined that Plaintiff's pain and other symptoms

were severe enough to often interfere with attention and concentration and imposed a

moderate limitation with regard to Plaintiff's ability to deal with stress. (T at 361). These non-exertional impairments could very well so narrow Plaintiff's possible range of work as to deprive her of a meaningful employment opportunity. Under such circumstances, consultative with a vocational expert is typically required.[10] Careful consideration should be given to this point after further development of the record on remand.

Accordingly, this aspect of the ALJ's decision also cannot be sustained and should be revisited on remand.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

---

[10] "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.; SSR 96-9p ("When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource.").

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for further administrative proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   October 30, 2012
Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

 FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

 Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

October 30, 2012

Victor E. Bianchini
United States Magistrate Judge